IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY COOPER, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO.   13-6222 |
| CITY OF PHILADELPHIA and | : | |
| POLICE OFFICER BRIAN CASH, | : | |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM**</u>

BUCKWALTER, S.J.                                                                                         February 12, 2015

Currently pending before the Court is Defendant Police Officer Brian Cash ("Defendant")'s[1] Motion for Summary Judgment as to all claims asserted by Plaintiffs Larry Cooper ("Plaintiff") and Tysha Cooper ("Plaintiff Tysha Cooper").[2]  For the following reasons, Defendant's Motion for Summary Judgment is granted.

## I.   FACTUAL HISTORY[3]

---

[1] Defendant Cash is the only remaining Defendant in this case, as the City of Philadelphia was dismissed by stipulation on September 15, 2014.  (Def.'s Mem. Supp. Mot. Summ. J. 1 (citing Docket No. 12).)  Accordingly, this Opinion addresses Defendant's Motion for Summary Judgment with respect to the remaining Counts in the Complaint: Count One, Plaintiff Larry Cooper's § 1983 claim against Defendant Cash; and Count Three, Plaintiff Tysha Cooper's loss of consortium claim against Defendant Cash.

[2] Defendant refers to Plaintiff's wife as "Tyesha" but the Court will use the same spelling of "Tysha" as set forth in the Complaint and in Plaintiff's brief.

[3] The statement of facts is compiled from a review of the parties' briefs and the evidence submitted in conjunction with those briefs. To the extent the parties allege a fact that is unsupported by evidence, the Court does not include it in the recitation of facts.

On April 25, 2012, Plaintiff was in the area of Jefferson University Hospital where his wife had recently undergone an emergency medical procedure. (Pl.'s Resp. Opp'n Mot. Summ. J. 3; Def.'s Mem. Supp. Mot. Summ. J. 1.)[4] According to Plaintiff, he was looking for a place to eat when an individual, later identified as Christopher Giardino, approached him and asked for directions. (Def.'s Mem. Supp. Mot. Summ. J. 1–2, Ex. A, Deposition of Larry Cooper ("Cooper Dep."), May 14, 2014, 18:18–23; Ex. B, Police Arrest Report at 1, Complainant Christopher Giardino.) Plaintiff testified at his deposition that he observed two men rob Mr. Giardino. (Cooper Dep. 18:24–19:3.) When the robbers began to run, Plaintiff also began to run, but stopped after a few feet because he realized there was nothing he could do. (Id. at 19:2–8.) After Plaintiff walked back to where Mr. Giardino was standing, Mr. Giardino accused Plaintiff of being involved in the robbery and knocked Plaintiff's cell phone from his hand, breaking it. (Cooper Dep. 19:9–15.)

Mr. Giardino called police to report the robbery attempt.[5] (Cooper Dep. 28:8–12.) When they arrived, Mr. Giardino told police that Plaintiff was involved in the robbery attempt. (Id. at 28:13–24; 29:21–25.) Mr. Giardino told Defendant that he was attacked from behind and that Plaintiff and two males pushed him down and took $200 from him. (Def.'s Mem. Supp. Mot. Summ. J. 2; Pl.'s Resp. Opp'n Mot. Summ. J. 4, Ex. F, Philadelphia Police Department Incident Report.) Mr. Giardino told Defendant that Plaintiff attempted, unsuccessfully, to take his cell

---

[4] Defendant's Memorandum of Law in Support of his Motion for Summary Judgment does not have page numbers, so the Court has supplied the numbering.

[5] A witness, Ashley Mak, told police at the scene that he called 911. (Def.'s Mem. Supp. Mot. Summ. J., Ex. D, Investigation Interview Record at 1.)

phone, and that he was able to hold Plaintiff at the scene until police arrived.[6] (Def.'s Mem. Supp. Mot. Summ. J. 2, Ex. C, Incident Report prepared by Officer Cash at "Description of Incident".) Plaintiff does not contest that Mr. Giardino gave a statement to police that identified him as a perpetrator of the robbery. (Id.; Cooper Dep. 28:13–24, 29:21–25, 33:15–19.) Defendant testified at his deposition that he did not ask Mr. Giardino or Plaintiff what they were doing in the area or whether they were intoxicated. (Pl.'s Resp. Opp'n Mot. Summ. J. 5–6, Deposition of Police Officer Brian Cash ("Cash Dep."), May 14, 2014, 37:17–41:5.)

Defendant also identified and spoke to a witness at the scene, Ashley Mak, who stated that Plaintiff was involved in the robbery. (Def.'s Mem. Supp. Mot. Summ. J. 2, Ex. E, Cash Dep. 28:6–9, 31:22–25.) During an interview with police, Mr. Mak said "it was pretty apparent that he [Plaintiff] was involved with everything. He was with the other two guys that were walking away."[7] (Id., Ex. D, Investigation Interview Record of Ashley Mak at 1.) Mr. Mak also described Plaintiff as being "[o]ne of the guys in the group of three." (Id.) Mr. Mak later recalled that on the night of the incident he heard Mr. Giardino yell for help, came down to the street from his third floor apartment, and saw Plaintiff and Mr. Giardino talking. (Pl.'s Resp. Opp'n Mot. Summ. J. 3, Ex. C, Affidavit of Ashley Mak ("Mak Aff."), Nov. 2, 2014.) Mr. Mak did not see the robbery occur. (Id.) When Mr. Mak got downstairs he saw Mr. Giardino

---

[6] Mr. Mak later stated in an affidavit that "[a]t no point did the alleged victim physically touch or restrain the man who walked back." (Pl.'s Resp. Opp'n Mot. Summ. J., Ex. C, Affidavit of Ashley Mak ("Mak Aff."), Nov. 2, 2014, at 2.) Mr. Mak's subsequent statements do not, for purposes of a probable cause analysis, undermine what Mr. Giardino said to police at the scene, because "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citation omitted) (emphasis added).

[7] Mr. Mak later said in his affidavit—which he provided to Plaintiff's attorney more than two years after the incident—that when he told police it was apparent that Plaintiff was involved with everything, he meant that Plaintiff had some interaction with Mr. Giardino because he saw them talking to each other, not that Plaintiff was one of the robbers. (Id. at 2.)

standing in the street alone and asked him if he was okay. (Id. at 1.) Mr. Giardino said "[t]hose guys robbed me" and pointed to three dark-skinned men. (Id.) From where he was standing, Mr. Mak could not determine whether the three men were near each other. (Id. at 2.) One of the men, later identified as Plaintiff, started walking back towards Mr. Mak and Mr. Giardino, and said to Mr. Giardino, "you are going to have to pay for my phone that you broke." (Id.) Mr. Giardino replied "you and the other two guys robbed me," and Plaintiff answered "they robbed you" and said something else that Mr. Mak could not hear. (Id.) Mr. Mak said that from what he observed, "the police officer who responded was questioning and searching the man whose cell phone was broken, but did not give that man an opportunity to explain anything and did not seem to listen to anything he had to say."[8] (Id. at 3.)

Plaintiff was arrested and charged with Robbery, Theft, Assault, Conspiracy, and Recklessly Endangering another Person. (Def.'s Mem. Supp. Mot. Summ. J. 2, Ex. B, Police Arrest Report at 1.) Defendant testified at his deposition that he arrested Plaintiff based on the statements by Mr. Giardino and Mr. Mak that Plaintiff was involved in the robbery.[9] (Id. at 2–3,

---

[8] Somewhat in conflict with Plaintiff's heavy reliance on Mr. Mak's November 2, 2014 Affidavit, Plaintiff refers to Mr. Mak's opinions about what he saw, as told to Defendant on April 25, 2012, as "uneducated." (See Pl.'s Resp. Opp'n Mot. Summ. J. 4 ("Mr. Mak offered defendant his uneducated opinion that Mr. Cooper must have been involved because he had been speaking with the victim.").)

[9] Plaintiff claims that "Defendant admitted during his deposition that it did not make sense to him that someone who had just allegedly robbed the victim of $200.00 would stay to wait for the police about his broken cell phone." (Pl.'s Resp. Opp'n Mot. Summ. J. 5.) In fact, Defendant testified at his deposition that it would not make sense to him for someone to stay at the scene in order to complain to police about a broken cell phone if they had just committed a robbery, but he also testified that he did not know Plaintiff's intentions at the time of the incident and that he could not "tell you what makes sense to someone else in their mind." (Pl.'s Resp. Opp'n Mot. Summ. J. 5, Ex. G, Cash Dep., 32:25–36:24.) Similarly, a detective assigned to the case testified at his deposition that "people lie all day and night and they're going to lie—maybe, like I said, when they're walking away, the police show up, figuring this guy is going to play reverse psychology and walk back and go, oh, no, it wasn't me, it was them." (Pl.'s Ex. H, Deposition of Detective Russell Shoemaker ("Shoemaker Dep."), Sept. 15, 2014, 22:2–7.)

4

Cash Dep. 41:25–42:4.) After his arrest, Plaintiff was incarcerated for seventy-seven days before all charges against him were dismissed. (Pl.'s Resp. Opp'n Mot. Summ. J. 7.)

The Complaint alleges that Defendant intentionally and maliciously deprived Plaintiff of his right to be free from false arrest, false imprisonment, and malicious prosecution, in violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983, and that Defendant's actions invaded Plaintiff's privacy and cast him in a false light. The Complaint also alleges that Defendant's actions deprived Plaintiff's wife "of the sex, society, companionship and services of [Plaintiff]" and that she will be deprived of the same for an indefinite time in the future. Defendant filed his Motion for Summary Judgment on October 20, 2014. Plaintiff filed her Response in Opposition on November 5, 2014. Defendant filed a Reply on November 20, 2014. As the briefing process has been exhausted, Defendant's Motion for Summary Judgment is now ripe for judicial consideration.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.

Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

### III.   DISCUSSION

Plaintiff asserts a constitutional claim against Defendant pursuant to § 1983, as well as an invasion of privacy claim. Plaintiff Tysha Cooper asserts a derivative loss of consortium claim against Defendant. The Court addresses each of these claims in turn, and after careful consideration, finds that summary judgment for Defendant is appropriate with respect to both Plaintiffs' claims.

### A. Plaintiff's Claims Against Defendant

In Count One of the Complaint, Plaintiff alleges that Defendant was deliberately indifferent to Plaintiff's rights and "intentionally and maliciously deprived [Plaintiff] of his rights, privileges[,] and immunities under the Constitution of the United States and the laws of the United States; in particular, the right to be free from false arrest, false imprisonment[,] and malicious prosecution; which violated [Plaintiff's] rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States, and were in violation of 42 U.S.C. Section 1983." (Compl. ¶¶ 24–25.) Plaintiff seeks compensatory and punitive damages, as well as attorney's fees and costs, interest, and any other reasonable and just relief. (Id., "Wherefore" Clause.)

Defendant argues that he is entitled to summary judgment on Count One because he had probable cause to arrest Plaintiff based on the statements of the victim and a witness who identified Plaintiff as the perpetrator. Because there was probable cause to arrest Plaintiff, Defendant asserts that Plaintiff's § 1983 claim for false arrest, false imprisonment, and malicious prosecution fails as a matter of law. Plaintiff responds by arguing that Defendant's Motion for Summary Judgment must be denied because (1) Defendant did not have any eyewitness identification of Plaintiff and the victim was unreliable, (2) Defendant "did no investigation to determine the reliability of any of the information he was provided," and (3) the determination of whether probable cause existed is a matter for a jury to decide at the time of trial. (Pl.'s Resp. Opp'n Mot. Summ. J. 13.)

"False arrest and false imprisonment are 'nearly identical claims' that are 'generally analyzed together.'" Karkut v. Target Corp., 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting

Brockington v. Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (citation omitted)). "Specifically, false arrest is one made 'without probable cause.'" Id. "The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention, where such detention is unlawful if it is the consequence of a false arrest." Id. (citation omitted). "To prevail on a § 1983 malicious prosecution claim, a plaintiff must show that the 'proceeding was initiated without probable cause.'" Stetser v. Jinks, 572 F. App'x 85, 86–87 (3d Cir. 2014) (quoting Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (citation omitted)).

"Probable cause exists when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" Stetser, 572 F. App'x at 87 (quoting United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979))). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "Although the probable cause inquiry is usually a question for the jury, 'where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate.'"[10] Stetser, 572 F. App'x at 87 (quoting Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (citation omitted), abrogated on other grounds by Curley v. Klem, 499 F.3d 199, 209–11 (3d Cir. 2007); see also Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788–89 (3d Cir. 2000) ("a district court may conclude 'that probable cause exists as a matter of law if the

---

[10] Plaintiff's assertion that "the Third Circuit has consistently held that 'in a § 1983 action the issue of whether there was probable cause to make an arrest is usually a question for the jury'" relies on an incomplete version of the above quotation from Sharrar and does not present a complete picture of the state of the law in the Third Circuit on this issue. (See Pl.'s Resp. Opp'n Mot. Summ. J. 9.)

evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly.") (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

Plaintiff's arguments regarding eyewitness identification and the reliability of the victim do not create an issue of fact as to the existence of probable cause. First, Plaintiff's claim that there was no eyewitness identification of Plaintiff is misleading.[11] Mr. Mak described to police what he saw once he arrived at street level, including seeing Plaintiff with two other men Mr. Giardino believed robbed him and watching the interaction between Plaintiff and Mr. Giardino, who accused Plaintiff of being part of the group that robbed him. Mr. Mak's descriptions contributed to Defendant's belief that there was probable cause to arrest Plaintiff. The fact that Mr. Mak provided Plaintiff's counsel with a somewhat contradictory affidavit more than two years after the incident does not retroactively eliminate Mr. Mak's witness statements to police at the time the incident occurred. See Devenpeck, 543 U.S. at 152 (stating that the existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.") Second, Plaintiff does not provide any support for his assertion that Mr. Giardino is "unreliable" or otherwise not credible.[12] (See Pl.'s Resp.

---

[11] Plaintiff states that Mr. Mak "did not witness anything." (Pl.'s Resp. Opp'n Mot. Summ. J. 10.) While Mr. Mak did not witness the actual robbery, he did witness interactions and conversations between Plaintiff and the victim and described them for police. Plaintiff's assertion, therefore, is neither accurate nor persuasive.

[12] Plaintiff asserts that "Defendant testified that he always accepts a victim's accusation as true if the defendant [sic] repeats it." (Pl.'s Resp. Opp'n Mot. Summ. J. 5 n.1 (citing Cash Dep.); see also id. at 12 ("The fact of the matter is that defendant always accepts the work [sic] of a victim [and] has a propensity to arrest suspects without probable cause.").) In fact, in response to the question "[d]o you automatically take the victim's word for what happened," Defendant said "[n]ot for the first thing they say. I have to, you know, talk to them and ask them, like I said earlier, I would ask, you know, a couple times what had taken place to make sure they still say the same thing had taken place." (Cash Dep. 37:8–16.)

Opp'n Mot. Summ. J. 4, 11.)  The fact that Mr. Giardino did not see who pushed him to the ground does not make him unreliable with respect to his statements to police at the scene.

Plaintiff also argues that "there is at least a factual question as to whether defendant could have reasonably believed that either the witness or the victim could make a positive identification of [Plaintiff]" because of when Mr. Mak arrived at the scene and because Mr. Giardino was pushed from behind.  Id. at 13.  These arguments, however, do not call into question Defendant's determination that, based on Mr. Giardino's observation of Plaintiff before and after the robbery and Mr. Mak's observations of what occurred after the robbery, there was probable cause sufficient to arrest Plaintiff.  Defendant could have relied on an identification of Plaintiff by either Mr. Giardino or Mr. Mak in order to establish probable cause—and in this case he relied on both.  See Sharrar, 128 F. 3d at 818 ("When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest.") (internal citations omitted); see also Petaccio v. Davis, 76 F. App'x 442, 445 (3d Cir. 2003) ("A victim's identification of a party as the perpetrator may validly provide probable cause to charge that party.") (citing Wilson v. Russo, 212 F.3d 781, 790–91 (3d Cir. 2000) (noting that "a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause," but declining to state an absolute rule))).  Thus, on the basis of Mr. Giardino's and Mr. Mak's statements, Defendant had sufficient probable cause to arrest Plaintiff.

As stated above, Plaintiff further argues that "the complete lack of investigation performed clearly establishes that defendant not only violated applicable police procedures,[13] but

---

[13] Defendant also argues that for purposes of evaluating Plaintiff's claims, which rely on an absence of probable cause, whether Defendant acted contrary to his training or police procedures is irrelevant because failure to follow an internal policy or procedure is insufficient to establish a constitutional violation.  (See Def.'s Reply 3.)  Third Circuit law appears to support Defendant's argument.  (See id. (citing Grazier ex rel. White v. City of Phila., 328 F.3d 120, 127 (3d Cir. 2003) (noting that the district court's charge to the jury "that violations of police procedure are

10

could not have reasonably believed that [Plaintiff] committed any offense [and,] [c]onsequently, no probable cause existed for an arrest." (Pl.'s Resp. Opp'n Mot. Summ. J. 11.)  Where an officer has established probable cause, however, he is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." Merkle, 211 F.3d at 790 (citation omitted); see also Davis v. Malitzki, 451 F. App'x 228, 233 (3d Cir. 2011) ("[E]vidence that might exonerate a defendant does not defeat probable cause.").  As discussed above, probable cause had been established on the basis of both the victim's statements and Mr. Mak's statements describing what he saw after exiting his apartment building. [14]  Plaintiff repeatedly asserts that Defendant ignored the "reliable exculpatory evidence" that Plaintiff had been visiting his wife in the hospital.  (Pl.'s Resp. Opp'n Mot. Summ. J. 13.)  Plaintiff, however, has neither established that Defendant knew that information at the time nor explained how such information would negate probable cause.[15]  Thus, Defendant's decision not to further investigate once probable cause to arrest Plaintiff had been established did not violate Plaintiff's constitutional rights.

---

not necessarily constitutional violations comports with established Supreme Court precedent.") (citing Davis v. Scherer, 468 U.S. 183, 193–95 (1984)).)

[14] Plaintiff also relies on Mr. Mak's statement in his affidavit that, from what he observed, "the police officer who responded was questioning and searching the man whose cell phone was broken, but did not give that man an opportunity to explain anything and did not seem to listen to anything he had to say." (Mak. Aff. at 3.)  As previously stated, Mr. Mak provided his affidavit more than two years after the events in question, and his later recollections do not negate the statements he made to police on April 25, 2012 that helped establish probable cause to arrest Plaintiff.

[15] In support of his argument, Plaintiff relies on deposition testimony from the detective assigned to the case who said that, if it could be verified that Plaintiff's wife was in the hospital, that fact could lend credibility to Plaintiff's assertion that he was only in the area because he was visiting his wife and could cast doubt on the victim's story.  (Pl.'s Resp. Opp'n Mot. Summ. J. 12 (citing Shoemaker Dep. 24:4–20).)  But even if Defendant had known at the time that Plaintiff had a reason for being in the area, and even if that fact caused him to further question Mr. Giardino's statements, he also had Mr. Mak's statements implicating Plaintiff to support probable cause.

According to Plaintiff, "the only reason defendant arrested [Plaintiff] was because he was at the end of his shift[16] and did not feel like taking the time to perform even the most basic investigation to see whether the victim's claim that [Plaintiff] was involved had even the slightest shred of reliability or was trustworthy in any way." (Pl.'s Resp. Opp'n Mot. Summ. J. 10.)  "A court determining whether an officer had probable cause considers an objective officer's beliefs rather than the arresting officer's state of mind." Stetser, 572 F. App'x at 87 (citing Devenpeck, 543 U.S. at 153).  In Devenpeck, the United States Supreme Court explained that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck, 543 U.S. at 153.  The Court went on to state that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action <u>does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action</u>." Id. (internal quotations and citations omitted) (emphasis added).  Accordingly, even if, as Plaintiff argues, Defendant's

---

[16] Plaintiff asserts that Defendant was working a 4:00 p.m. to midnight shift on April 25, 2012, but cites to an excerpted portion of another officer's deposition testimony that does not indicate whether that officer, who was on the 4:00 p.m. to midnight shift, was working with Defendant at the time. (See Pl.'s Resp. Opp'n Mot. Summ. J. 4, Ex. D, Deposition of Eric Romanczuk, Sept. 15, 2014, 16:11–12.)
    Plaintiff also asserts that Defendant arrived at the scene of the incident at 11:46 p.m., shortly before the end of his shift, and cites Plaintiff's Exhibit E in support. (Id., Ex. E, Philadelphia Police Department Incident History Details.)  It is not clear to the Court, on the basis of that document, that Defendant arrived on scene at 11:46 p.m., because while there is a code section that says "04/24/2012 23:46:11 CHNG  Location: S CAMAC ST/WALNUT ST, PHL," the document also states near the top of the report "ONSCENE: 04/24/2012 23:28:49" which could imply that officers arrived on scene at 11:28 p.m.  In addition, Defendant submitted a Philadelphia Police Department Arrest Report for Plaintiff which states that Plaintiff was arrested on April 25, 2012, at 11:30 p.m. and that police responded to 1200 Walnut Street around 11:27 p.m. (Def.'s Mem. Supp. Mot. Summ. J., Ex. B at 1.)  Finally, Defendant testified at his deposition that he and another officer responded to the scene at 11:28 p.m. after receiving the call for a robbery in progress at 11:26 p.m. (Cash Dep. 47:16–19.)  In light of these conflicting documents and in the absence of further explanation of the times listed in the Incident History Details, the Court cannot rely on Plaintiff's assertion that Defendant did not arrive at the scene until 11:46 p.m.

decision to arrest Plaintiff was partly motivated by the conclusion of his shift, that factor would not render the arrest unconstitutional so long as it was based on probable cause. As discussed above, Defendant had probable cause to arrest Plaintiff, and thus Plaintiff's argument about Defendant's state of mind is not persuasive.

In light of the foregoing, Defendant had sufficient probable cause to arrest Plaintiff on the night of April 25, 2012.[17] Accordingly, Defendant's Motion for Summary Judgment is granted as to Count One.[18]

### B.     Plaintiff Tysha Cooper's Loss of Consortium Claim Against Defendant

Count Three alleges that, as a direct and proximate result of the damages to Plaintiff detailed throughout the Complaint and in Count One,[19] Plaintiff Tysha Cooper was "deprived of the sex, society, companionship[,] and services of her husband, and [that] she will be deprived of

---

[17] Defendant also argued that he is entitled to qualified immunity with respect to Plaintiff's claim. As Defendant's Motion for Summary Judgment is being granted with respect to Count One, it is not necessary to address the issue of qualified immunity.

[18] Count One also alleges that Defendant "invaded the privacy and/or cast [Plaintiff] in a false light by making it appear to others that [Plaintiff] had violated or was violating the laws of the Commonwealth of Pennsylvania or of another jurisdiction." (Id. ¶ 26.) Defendant argues that, under Pennsylvania law, the statute of limitations for an action for invasion of privacy must be commenced within one year. (Def.'s Mem. Supp. Mot. Summ. J. 1 n.2 (citing 42 Pa. C.S. § 5523).) Defendant urges dismissal of that portion of Count One because Plaintiff was arrested on April 25, 2012, but did not file his Complaint until October 24, 2013. (Id.) As Plaintiff's invasion of privacy/false light claim is outside the statute of limitations, the Court's grant of summary judgment to Defendant extends to all of Count One.

[19] Defendant also argues that there is a lack of authority which permits spousal recovery for loss of consortium based on violations of the other spouse's civil rights. (Def.'s Mem. Supp. Mot. Summ. J. 9.) Case law in this district supports Defendant's argument, see, e.g., Quitmeyer v. Se. Pa. Transp. Auth. ("SEPTA"), 740 F. Supp. 363, 370 (E.D. Pa. 1990) (collecting cases and observing that "there is no authority to permit spousal recovery for loss of consortium based on violations of the other spouse's civil rights.") (internal citations omitted). Nonetheless, as summary judgment is being granted to Defendant with respect to Plaintiff Tysha Cooper's loss of consortium claim on other grounds, the Court does not address this issue.

the same for an indefinite time in the future, all to her great detriment and loss." (Compl. ¶ 42.) Plaintiff Tysha Cooper requests compensatory damages, attorney's fees and costs, interest, and any other reasonable and just relief. (Id., "Wherefore" Clause.)

The parties agree that Plaintiff Tysha Cooper's loss of consortium claim is derivative in nature. (See Def.'s Mem. Supp. Mot. Summ. J. 8; Pl.'s Resp. Opp'n Mot. Summ. J. 16.) Plaintiff argues only that, because Defendant's Motion for Summary Judgment should fail with respect to Plaintiff's claim, there is no basis to enter judgment on Plaintiff Tysha Cooper's claim. (Pl.'s Resp. Opp'n Mot. Summ. J. 16.) Under Pennsylvania law, Plaintiff Tysha Cooper must show that Defendant is liable to Plaintiff in order to succeed on her loss of consortium claim. See, e.g., McNeal v. City of Easton, 598 A.2d 638, 642 (Pa. Cmmw. Ct. 1991) ("In order to recover under a loss of consortium theory, a party must show the defendant is liable to his or her spouse."); Quitmeyer v. Se. Pa. Transp. Auth. ('SEPTA'), 740 F. Supp. 363, 370 (E.D. Pa. 1990) (stating that "where the allegedly injured spouse fails to plead a cognizable claim, his spouse's claim for loss of consortium cannot survive.") As summary judgment is being granted in Defendant's favor with respect to Plaintiff's claim in Count One, the Court must also grant summary judgment in Defendant's favor with respect to Plaintiff Tysha Cooper's loss of consortium claim in Count Three.

### IV.   CONCLUSION

Having reviewed the briefs and pleadings and their exhibits, the Court finds that Plaintiff has not set forth evidence that would enable a jury to reasonably find in his favor. The same is true for Plaintiff Tysha Cooper's derivative claim for loss of consortium. Accordingly, the Court shall grant Defendant's Motion for Summary Judgment in its entirety.

An appropriate Order follows.